UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>ARTHUR GARDUNO,<br><br>    Defendant. | Case No. 24-cr-20610<br><br>Honorable Robert J. White |

**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

The Government charged Arthur Garduno with felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (ECF No. 1). He was later indicted by a Grand Jury. (ECF No. 11, PageID.20). Before the Court is Garduno's motion to suppress all the evidence obtained from the wrongful seizure, arrest, and search that formed the basis for the charge. (ECF No. 17).

The series of events that led to Garduno's arrest and the felon-in-possession charge unfolded as follows. A few weeks before Garduno's arrest, officers observed him brandishing what they believed to be a firearm on surveillance footage, in violation of his supervised release. (ECF No. 18-3, PageID.79). The next week, Garduno allegedly fled from officers who were looking for him. (ECF No. 17-3,

PageID.60). When an officer recognized Garduno walking down the street later that month, he and his partner placed Garduno under arrest and cited both of those prior incidents as the reason. (ECF No. 17-2, PageID.53; ECF No. 18-7, PageID.85). The search subsequent to the arrest uncovered a firearm on Garduno's person and resulted in the current charge against him. (ECF No. 18-7, PageID.85).

But according to Garduno, neither the gun brandishing incident nor the fleeing and eluding established probable cause, and the officers therefore lacked a constitutionally permissible basis for arrest. (ECF No. 17, PageID.43; ECF No. 27, PageID197–203). Because the seizure, arrest, and search of Garduno's person allegedly violated the Fourth Amendment, Garduno moved to suppress all evidence seized as a result, including the firearm. (ECF No. 17).

In its response to Garduno's motion, the Government argued that both the gun brandishing and the fleeing and eluding gave officers probable cause to arrest Garduno. (ECF No. 18, PageID.66–67). Officers thus did not violate the Fourth Amendment when they searched Garduno and seized the firearm from his person after the arrest. (*Id.* at PageID.67). Accordingly, the Government urged the Court to deny Garduno's motion. (*Id.*).

For the reasons explained below, the Court finds that probable cause existed for the officers to arrest Garduno for the gun brandishing incident. Because the gun brandishing incident is sufficient on its own to establish probable cause, the Court

need not consider whether the fleeing and eluding also served as a valid basis for Garduno's arrest. Finally, considering the officers did not violate the Fourth Amendment when they arrested Garduno and searched his person, the Court will deny Garduno's motion to suppress.

I. **Background**

The Court will address the events leading to Garduno's arrest chronologically, beginning with the gun brandishing incident.

On October 7, 2024, the Detroit Police Department (DPD) dispatched officers to investigate a call regarding a woman who felt threatened by two men in the common area of her apartment. (ECF 18-2, PageID.78). The woman informed the officers that two men came to her door, and after opening the door and speaking with them briefly, she closed the door, and they left. (*Id.*). Although she did not recognize the men, she believed that one of the men had a firearm in his waistband. (*Id.*).

Two days later, officers went back to the apartment complex to review the surveillance footage from that night. (ECF No. 18-3, PageID.79). Based on the screenshots submitted in the Government's response, the surveillance footage captured a clear image of the suspect's face. (ECF No. 18, PageID.64). One of the reviewing officers recognized Garduno as the suspect who had knocked on the woman's door; the officer knew Garduno from a previous, unrelated incident several years before. (ECF No. 18-3, PageID.79). The same officer wrote in his police report

3

that he "clearly" observed Garduno holding a "silver handgun in his left hand" in the footage. (*Id.*). The report noted that Garduno is "on federal probation and is not allowed to possess a firearm." (*Id.*).

The fleeing and eluding occurred about a week after the gun brandishing incident, on October 12, 2024. (ECF 18-4, PageID.80). While on patrol that day, Officers Willie Harvey and Marcos Rosario received a text from their lieutenant to look out for Garduno in a "light colored minivan." (Gov't Hr'g Ex. 3). Officer Rosario testified that the same lieutenant previously told him in person that Garduno was on federal supervision and seen in a video with a firearm. (ECF 23, PageID.138–39). Officer Harvey responded to the text thread that he believed Garduno drove a "tan color older Subaru" and that "[Garduno] took off on me like 2 years ago in it." (Gov't Hr'g Ex. 3). Roughly fifteen minutes after Officer Harvey's text, Officer Rosario reported that Garduno "just took off" on him and Harvey and that he would draft the report. (*Id.*). The lieutenant replied "ATF is gonna probably hit [Garduno's] door" once officers received the surveillance video from the apartment. (*Id.*).

According to Officer Rosario's police report and Officer Harvey's supplemental report, they were headed to Garduno's address when they observed a tan Subaru drive past them. (ECF No. 18-4, PageID.80; ECF No. 18-6, PageID.84). Officer Harvey identified Garduno as the driver and noticed the car had a broken taillight. (ECF No. 18-4, PageID.80; ECF No. 18-6, PageID.84). The officers

activated the overhead lights and sirens to initiate a traffic stop. (ECF No. 18-4, PageID.80; ECF No. 18-6, PageID.84). But the "offender disregarded the stop and began to flee." (ECF No. 18-4, PageID.80), and the officers terminated the stop over safety concerns. (ECF 23, PageID.130). Afterwards, officers spoke with the registered owner of the vehicle, who informed them that her grandson was driving her car that day. (ECF No. 18-4, PageID.80). The officers did not seek an arrest warrant. (ECF No. 23, PageID.131–32).

On October 20, 2024, Officer Rosario observed two men walking, one on the sidewalk and one in the street. (ECF No. 17-2, PageID.53; ECF No. 23, PageID.157). Officer Rosario recognized the man on the sidewalk as Garduno. (ECF No. 17-2, PageID.53). With the assistance of his partner, Officer Rosario placed Garduno under arrest. (*Id.*). To note, Garduno was not engaged in any criminal activity at the time. (ECF No. 23, PageID.157). After the arrest, another officer at the scene conducted a search of Garduno's person and found the firearm. (ECF No. 17-2, PageID.53).

Officer Rosario's initial police report stated that Garduno "was placed under arrest for the fleeing and eluding." (*Id.*). The following day, Officer Rosario authored a supplemental report to add the gun brandishing incident as a cause for arrest. (ECF No. 18-7, PageID.85). Officer Harvey testified that when he arrived on the scene on the day of Garduno's arrest, he realized he had mistakenly identified

Garduno as the driver in the fleeing and eluding. (ECF No. 23, PageID.120). On October 21, 2024, Officer Harvey wrote a supplemental report to the fleeing and eluding incident that corrected his mistake. (ECF No. 18-6, PageID.84). He confirmed that Garduno was not the driver but rather the front passenger after reviewing the dash camera footage from October 12. (*Id.*).

Garduno moved to suppress all evidence obtained from his arrest, search, and seizure following his indictment. (ECF No. 17). The Court held an in-person hearing on Garduno's motion to suppress on February 7, 2025. (ECF No. 21). At the hearing, the only basis the Government conceded for Garduno's stop and arrest was the probable cause established by the gun brandishing and the fleeing and eluding. (ECF No. 23, PageID.107). Garduno disagreed and argued neither established probable cause. (ECF No. 27, PageID197–203).

## II. Legal Standard

"A warrantless arrest of an individual in a public place for a felony . . . is consistent with the Fourth Amendment if the arrest is supported by probable cause." *Maryland v. Pringle*, 540 U.S. 366, 370 (2003). But "[i]t is a well-settled principle of constitutional jurisprudence that an arrest without probable causes constitutes an unreasonable seizure in violation of the Fourth Amendment." *United States v. Romero*, 452 F.3d 610, 615 (6th Cir. 2006) (quoting *Ingram v. City of Columbus*, 185 F.3d 579, 592–93 (6th Cir. 1999)). To determine if officers had probable cause,

6

courts consider whether the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent person in believing that defendants had committed or were committing an offense. *Romero*, 452 F.3d at 615. The analysis depends on the "totality of the circumstances." *Florida v. Harris*, 568 U.S. 237, 244 (2013).

Probable cause "is not a high bar" to meet. *Kaley v. United States*, 571 U.S. 320, 338 (2014). Instead, it is a "flexible, common-sense standard," *Harris*, 568 U.S. at 240 (quoting *Illinois v. Gates*, 462 U.S. 213, 239 (1983)). It requires only the "kind of 'fair probability' on which reasonable and prudent [people,] not legal technicians, act." *Harris*, 568 U.S. at 244 (quoting *Gates*, 462 U.S. at 238).

In the context of an arrest, a court's frame of reference as to probable cause is that of an "objectively reasonable police officer." *Pringle*, 540 U.S. at 371 (citation omitted). The arresting officer's "state of mind, except for the facts that he knows, is irrelevant." *United States v. Abdi*, 463 F.3d 547, 558 (6th Cir. 2006) (quoting *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)). "[A]ll that matters is whether the arresting officers possessed knowledge of evidence sufficient to establish probable cause." *Abdi*, 463 F.3d at 559. If officers arrest a defendant without probable cause, then any evidence obtained thereby is inadmissible in federal court. *United States v. Pearce*, 531 F.3d 374, 381 (6th Cir. 2008).

7

**III.    Analysis**

The Government offered two independent bases to establish probable cause for Garduno's arrest: (1) the gun brandishing and resulting violation of supervised release; and (2) the fleeing and eluding incident. (ECF No. 26, PageID.175–86). Garduno challenged both.   First, Garduno argued that Officer Rosario lacked sufficient knowledge of the gun brandishing incident for it to establish probable cause, as evident by Officer Rosario's failure to cite the incident as a reason for arrest in Officer Rosario's initial police report. (ECF No. 27, PageID.200–01).  In addition, Officer Harvey's misidentification of Garduno as the driver in the fleeing and eluding was unreasonable and therefore incapable of serving as the basis for probable cause. (*Id.* at PageID.199–200).

As explained below, Officer Rosario had probable cause to arrest Garduno for the gun brandishing.  And because the gun brandishing established probable cause irrespective of the fleeing and eluding, the Court will deny Garduno's motion to suppress.  In doing so, the Court will not address whether probable cause existed based on the fleeing and eluding.

> **Probable Cause Existed to Arrest Garduno for Brandishing a Weapon in Violation of His Supervised Release.**

The totality of the circumstances shows that at the time of Garduno's arrest, Officer Rosario knew Garduno was wanted for violating his supervised release by

brandishing a weapon on camera. Officer Rosario therefore had probable cause to arrest Garduno.

The hearing testimony and text messages offered into evidence lend credence to Officer Rosario's awareness that DPD was actively looking for Garduno based on the surveillance footage. First, Officer Rosario testified that his lieutenant initially told him in person about the firearm brandishing incident, prior to the fleeing and eluding. (ECF No. 23, PageID.138–39). Second, in a series of text messages exchanged on the day of the fleeing and eluding, the same lieutenant sent Officers Rosario and Harvey the address associated with Garduno and details about the car Garduno supposedly drove. (Gov't Hr'g Ex. 3). And after receiving Garduno's address, Officers Harvey and Rosario went in the direction of Garduno's residence to canvas for him. (ECF No. 23, PageID.132). When the officers informed the lieutenant that Garduno took off on them, she responded that another law enforcement agency would likely go to Garduno's address as soon as DPD received the surveillance footage from the apartment complex. (Gov't Hr'g Ex. 3). Officer Rosario, therefore, knew about and actively participated in the search for Garduno following the gun brandishing.

In addition, Officer Rosario mentioned explicitly in his supplemental report to Garduno's arrest that he stopped Garduno for an alleged violation of Garduno's federal probation. *See* ECF No. 18-7, PageID.85 ("[Garduno] was investigated due

to. . . [Rosario] being notified on the date 10/11/2024 by 4-65 Lt. Sukey that the offender was on federal probation, which was confirmed through LEIN . . . [Garduno] was observed to be in possession of a firearm from surveillance video related to the incident report."). Although Officer Rosario's original report neglected to mention the gun brandishing incident, his decision to supplement the report within a day of the arrest lends credibility to the delay. That is, Officer Rosario did not edit his report months or weeks after the fact, nor was trial or other litigation imminent at the time. What is more, Officer Rosario's testimony corroborates that he was aware of the gun brandishing when he arrested Garduno. (ECF No. 23, PageID.145).

The probable cause analysis does not change even though Officer Rosario did not personally review the surveillance footage (*Id.* at PageID.146, 153–54, 157). The collective knowledge doctrine "permits an officer to conduct a stop based on information obtained from fellow officers." *Bey v. Falk*, 946 F.3d 304, 316 (6th Cir. 2019) (citation omitted). That is, a police officer "need not rely solely on the information that they witness first-hand." *Bauman v. Millisor*, No. 21-1527, 2022 WL 35470, at *3 (6th Cir. Jan. 4, 2022). So long as the evidence shows that officers "communicated the relevant information among themselves," the Court may look to the collective knowledge of officers working as a team to determine probable cause. *Id.* The doctrine recognizes the "practical reality that effective law enforcement

cannot be conducted unless police officers can act on directions and information transmitted by one officer to another." *United States v. Lyons*, 687 F.3d 754, 766 (6th Cir. 2012) (citation omitted).  The application of the doctrine is limited by what the Fourth Amendment allows. *Id.* (noting the "doctrine's primary boundary is, of course, the Fourth Amendment itself").  That is, a stop based on collective knowledge must still be supported by a "proper basis." *Id.*

Here, the evidence shows Officer Rosario received more than enough information from other officers to establish a proper basis for probable cause.  As mentioned, he testified that his lieutenant told him about Garduno's violation of supervised release. (ECF No. 23, PageID.138–39).  And his text messages and police reports indicated that he knew DPD was looking for Garduno based on the gun brandishing incident. (Gov't Hr'g Ex. 3).

Even still, Garduno posited that this information was not enough to support a finding of probable cause. (ECF No. 27, PageID.200–03).  But there is no minimum amount of information that must be communicated among officers to impute collective knowledge. *See Lyons*, 687 F.3d at 768.  And because "[r]esponding officers are entitled to presume the accuracy of information furnished to them by other law enforcement personnel," there is no issue with Officer Rosario relying on information from other officers about Garduno's criminal acts. *Id.* at 769.

11

Finally, less than two weeks passed between the gun brandishing incident and Garduno's arrest. Because the time between the two events did not make it any less probable that Garduno committed the crime, Officer Rosario still had a valid reason to arrest Garduno. *See United States v. Haldorson*, 941 F.3d 284, 292 (7th Cir. 2019) ("It is the rare case where 'staleness' will be relevant to the legality of a warrantless arrest.").

For all these reasons the Court finds that probable cause existed, based on the totality of the circumstances, for Officer Rosario to arrest Garduno for brandishing a weapon. And because the gun brandishing incident gave Officer Rosario a valid reason to arrest Garduno, the seizure, arrest, and search did not violate the Fourth Amendment. Garduno's motion to suppress the evidence is, therefore, denied.

\* \* \*

For the reasons given, the Court **ORDERS** that Garduno's motion to suppress (ECF No. 17) is **DENIED**.

Dated: March 21, 2025

s/Robert J. White  
Robert J. White  
United States District Judge